Filed    24-CI-001558    03/05/2024    David L. Nicholson, Jefferson Circuit Clerk

**DOCUMENT**

**PM**

**EXHIBIT**

**A**

NOT ORIGINAL

03/21/2024 03:32:44

NO. _____

**JEFFERSON CIRCUIT COURT**
**DIVISION** ~~82451-9~~

**JUDGE** _____

*-Filed Electronically-*

**MICHAEL HUGHES, M.D.**                                    **PLAINTIFF**

**v.**                    **VERIFIED COMPLAINT**
          **FOR INJUNCTIVE AND DECLARATORY RELIEF**

**UOFL HEALTH-LOUISVILLE, INC. d/b/a**               **DEFENDANT**
**UOFL HEALTH-JEWISH HOSPITAL**
          **Serve: James Rayome**
                    **530 S. Jackson Street**
                    **Louisville, Kentucky 40202**

* * * * * * * * *

Comes now the Plaintiff, Michael Hughes, M.D., by and through counsel, and for his Verified Complaint against the Defendant, UofL Health-Louisville, Inc. d/b/a UofL Health-Jewish Hospital, states as follows:

**INTRODUCTION**

Dr. Michael Hughes wanted better for his patients and our community as a whole, so he reported patient safety concerns that he saw at UofL, and expanded his practice to compete with UofL's motility clinic. In response, UofL initiated disciplinary proceedings against Dr. Hughes and reported him to the National Practitioner Data Bank based on patently false allegations of misconduct and suspended his surgical privileges, ignoring its legal obligation to follow its own bylaws in the process. Now Dr. Hughes' patients are left in a bind, without the ability to get the necessary medical care that they unquestionably need, and Dr. Hughes' medical career is on the precipice of failure. Immediate action is necessary to make things right.

Presiding Judge: HON. PATRICIA "TISH". MORRIS (630457)

COM : 000001 of 000022

Filed    24-CI-001558    03/05/2024    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
03/21/2024 03:32:44
PM
82451-9

Presiding Judge: HON. PATRICIA "TISH". MORRIS (630457)

COM : 000002 of 000022

## JURISDICTION AND PARTIES

1.     That Plaintiff, Michael Hughes, M.D. ("Dr. Hughes") is a resident of Louisville, Jefferson County, Kentucky.

2.     That Defendant, UofL Health-Louisville, Inc. d/b/a UofL Health-Jewish Hospital ("UofL") is, and all times relevant hereto has been, a Kentucky corporation licensed to do and doing business in Kentucky as a provider of inpatient and outpatient medical services, located at 530 South Jackson Street, Louisville, KY 40202.

3.     That the act and/or omissions complained of herein occurred in Louisville, Jefferson County, Kentucky.

4.     That this Court has jurisdiction under the common and statutory law of the Commonwealth of Kentucky, including Kentucky Revised Statute 216B.165 entitled "Duty to report quality of care and safety problems – investigation and report – Prohibition against retaliation," and that this Court also possesses jurisdiction for the injunctive and declaratory relief requested under Civil Rule 57 and 65.

## FACTS

5.     Dr. Hughes is a board-certified surgeon who provides medical and surgical management of chronic pancreatitis and gastroparesis to patients across the region and sometimes across the country who are desperate for his specialized care.

6.     Dr. Hughes is an impeccably credentialed surgeon and a surgical innovator in the treatment of patients with chronic pancreatitis.

7.     Among other things, Dr. Hughes has pioneered and trained surgeons and hospitals across the globe in how to perform islet autotransplantation ("TP-IAT").

Filed    24-CI-001558    03/05/2024    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
03/21/2024 03:32:44
PM    82451-9

8.    TP-IAT is a highly specialized surgical procedure that eliminates the pain of chronic pancreatitis, reduces opioid consumption, and preserves insulin secretory capacity.

9.    Dr. Hughes is one of the top five (5) surgeons world-wide performing TP-IAT.

10.    Dr. Hughes is the only surgeon performing TP-IAT in Kentucky.

11.    Dr. Hughes' patients travel to Louisville, Kentucky from across the region and sometimes from across the country desperate for his specialized care.

12.    Dr. Hughes maintained privileges at UofL Jewish Hospital from October 1, 2010, until November 21, 2023 and performed surgeries there on a weekly basis, including TP-IAT since it became available in 2015.

## A.    Immediate and Irreparable Harm to Patients

13.    When UofL summarily suspended Dr. Hughes' privileges on November 21, 2023 and reported him to the National Practitioner Data Bank ("NPDB") on January 18, 2024, UofL eliminated TP-IAT as a treatment option for Kentucky patients.

14.    For TP-IAT, Dr. Hughes currently has two (2) patients ready for surgery and four (4) more near ready. These surgeries can only be done at UofL Jewish Hospital.

15.    For TP-IAT, a company named Koligo Therapeutics is the only vendor providing auto-islets necessary for this procedure in Kentucky, and UofL Jewish Hospital is the only hospital contracted with Koligo Therapeutics.

16.    Dr. Hughes has successfully completed over three thousand (3,000) gastroparesis surgeries (gastric stimulators and pyloroplasties) which is more than any other surgeon worldwide.

17.    Dr. Hughes is the only economic competition to the UofL Gastrointestinal (GI) Motility Program in Kentucky. The UofL surgeon placing gastric stimulators only started doing

Presiding Judge: HON. PATRICIA "TISH". MORRIS (630457)

COM : 000003 of 000022

Filed          24-CI-001558    03/05/2024          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
03/21/2024 03:32:44
PM
82451-9

so within the last year. By UofL's actions against Dr. Hughes, UofL has created a monopoly with a much less experienced surgeon.

18.     For gastroparesis surgery, Dr. Hughes currently has fourteen (14) patients ready for surgery and twenty-two (22) near ready. Due to medical comorbidities and/or insurance contracting, these procedures can only be done at UofL Jewish Hospital.

19.     When UofL summarily suspended Dr. Hughes' privileges on November 21, 2023 and reported him to the National Practitioner Data Bank ("NPDB") on January 18, 2024, Dr. Hughes was prevented from performing these life-saving surgical procedures which have to take place at a hospital.

20.     The lives and safety of Dr. Hughes' patients are in immediate jeopardy.

**B.     UofL's Retaliation, Bad Faith & Biased Conduct, and Tortious Interference**

21.     UofL has taken the aforementioned actions against Dr. Hughes in retaliation for (1) Dr. Hughes' reporting of patient safety issues on July 3, 2023, and (2) Dr. Hughes' operation of his private practice outside of UofL's financial umbrella.

22.     UofL has taken these actions against Dr. Hughes in bad faith and in breach of its bylaws.  UofL's position is that it has taken these actions against Dr. Hughes ostensibly because he caused a complication for one patient ("Patient PM").  On July 3, 2023, Dr. Hughes reported to UofL that Patient PM's complication was due to bag mask ventilation performed by Dr. Mohamed Saad with UofL Pulmonary and Critical Care Medicine, and asked UofL to "review the role of the palliative care team" who was consulted by Dr. Saad's ICU team. Both Dr. Hughes and Dr. Dawwas (consulting gastroenterologist) felt that comfort care was premature. Dr. Hughes documented in the medical record the day prior to palliative care consultation: "*palliative care to see, though this is not a terminal condition*." Dr. Hughes was concerned that Dr. Saad's ICU team

Presiding Judge: HON. PATRICIA "TISH". MORRIS (630457)

COM : 000004 of 000022

Filed    24-CI-001558    03/05/2024    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
03/21/2024 03:32:44
PM
82451-9

consulted palliative care to cover up an iatrogenic complication caused by Dr. Saad. Dr. Saad then participated in UofL's decision to revoke Dr. Hughes' privileges. Further, during testimony at a UofL internal hearing, a UofL employee testified that Dr. Saad (1) failed to disclose his involvement, (2) did not recuse himself, and (3) typically recuses himself when involved. Despite being aware of this, UofL upheld its decision to revoke Dr. Hughes' privileges.

23.    UofL hired a professional "peer reviewer" (Dr. David Parker) who is a bariatric surgeon with no background in the treatment of gastroparesis patients like Patient PM to opine that Dr. Hughes significantly breached the standard of care in his treatment of Patient PM.[1]

24.    After UofL took the aforementioned actions against Dr. Hughes, UofL has alleged that Dr. Hughes (1) had caused additional adverse patient outcomes for "Patient SS" and "Patient SD", and (2) Dr. Hughes had an elevated mortality index of 1.37.

25.    UofL used false metrics to calculate this mortality index.

26.    UofL's Chairman of the QAIC (Dr. Matthew Benns) testified to the MEC about Patient SS and Patient SD without disclosing that Dr. Hughes had consulted him for a second opinion on management of Patient SS. Dr. Benns agreed with Dr. Hughes' clinical judgement at the time but later altered his position with UofL's summary suspension of Dr. Hughes.

27.    Dr. Matthew Benns is an economic competitor of Dr. Hughes.

28.    UofL never had an external peer review of Dr. Hughes' treatment of Patient SS and Patient SD.

29.    Dr. Hughes did hire an external peer review for his treatment of Patient PM, Patient SS, and Patient SD. This external peer review was performed by Dr. Roman Petrov. Dr. Petrov

---

[1] UofL's VP of Quality (RN Kami Walker) and UofL's QAIC Chair (Dr. Benns) would later testify at a January 25, 2024 hearing that no one with UofL ever had any communication with Dr. Parker to determine if he has every taken care of gastroparesis patients or has ever performed a pyloroplasty. And Dr. Parker did not testify at this hearing.

Presiding Judge: HON. PATRICIA "TISH". MORRIS (630457)

COM : 000005 of 000022

Filed        24-CI-001558    03/05/2024                David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
03/21/2024 03:32:44
PM                                                                                    82451-9

is a board certified and impeccably credentialed surgeon who has performed over 300 procedures for gastroparesis, including the pyloroplasty procedure which was performed by Dr. Hughes on patient PM. Dr. Petrov is a published expert in gastroparesis surgery. Dr. Petrov opined that Dr. Hughes met the standard of care in regard to Patients PM, SS, and SD, and that Dr. Hughes should be congratulated on successfully achieving a good outcome for Patient SS.

30.    Conversely, UofL's expert witness did not provide any testimony. Instead, UofL provided testimony from Dr. Benns (UofL's QAIC Chair who provided care to Patient SS) and Dr. Eggers (Dr. Hughes' direct competitor).  Both these physicians are economic competitors of Dr. Hughes and/or were involved in the underlying care and treatment of Patients PM, SS, and SD.

**C.    UofL Has Created a Monopoly Over Gastroparesis Care in Kentucky**

31.    If UofL's summary suspension of Dr. Hughes' privileges is not lifted, and UofL's filing of its NPDB report against Dr. Hughes is not voided, then Dr. Hughes is unable to operate on patients, Dr. Hughes' business will fail, and Dr. Hughes' medical license and career will be in jeopardy.

32.    UofL's aforementioned actions against Dr. Hughes have effectively eliminated any competition and UofL will have established a monopoly over gastroparesis care in Kentucky.

**D.    UofL Surgery Chief (Dr. Kelly McMasters) Retaliation, and Tortious Interference**

33.    In November 2010, Dr. Hughes moved to Louisville after being recruited and hired by Dr. Kelly McMasters (UofL Surgery Chief) as UofL's Assistant Professor of Surgery and Director of Pancreas Transplantation.

34.    In 2013, Dr. McMasters promoted Dr. Hughes to be UofL's Director of Living Donor Transplantation and Director of Pancreas and Islet Transplantation after Dr. Hughes secured a nearly $1 million dollar grant to start a TP-IAT program at UofL.

Presiding Judge: HON. PATRICIA "TISH". MORRIS (630457)

COM : 000006 of 000022

Filed        24-CI-001558    03/05/2024        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
03/21/2024 03:32:44
PM
82451-9

35.     Dr. Hughes received excellent evaluations and a prestigious career development award, and was awarded the MediStar Innovation Award.

36.     In 2017, Dr. Kelly McMasters (UofL's Surgery Chief) promoted Dr. Hughes to Associate Professor of Surgery.

37.     In March of 2018, UofL negotiated an agreement to allow Dr. Hughes and two other UofL faculty to start an independent business (Koligo Therapeutics) to provide islet auto-transplantation capabilities to other hospitals and surgeons to perform this life-saving TP-IAT procedure.

38.     In April of 2018, Dr. McMasters – who gained little to nothing from the collaborative agreement between UofL and Dr. Hughes – retaliated against Dr. Hughes.

39.     Out of nowhere, Dr. McMasters informed Dr. Hughes that he would not renew his contract with UofL when it expired in October of 2018.

40.     Dr. McMasters' threat to not renew his contract was in retaliation for the above agreement and to prevent physicians like Dr. Hughes from gaining financially independent of Dr. McMasters and UofL.

41.     From October 2018 to April 2019, Dr. McMasters placed Dr. Hughes on month-to-month contracts.

42.     In May of 2019, Dr. Hughes left his faculty position at UofL under Dr. McMasters.

43.     Dr. Hughes started his own independent practice (Vanguard Surgical).

44.     Dr. Hughes retained privileges to perform surgery at Jewish Hospital (and subsequently UofL after UofL took over).

45.     Patients from across the country began traveling to Louisville for Dr. Hughes' treatment of the gastroparesis and chronic pancreatitis work that he had built at UofL.

Presiding Judge: HON. PATRICIA "TISH". MORRIS (630457)

COM : 000007 of 000022

Filed          24-CI-001558     03/05/2024          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
03/21/2024 03:32:44
PM
82451-9

46.     Dr. Hughes was the only economic competitor with UofL for gastroparesis-related surgery in Kentucky.

47.     In 2019, UofL acquired KentuckyOne Health and Jewish Hospital.

48.     On August 26, 2019, Dr. Hughes asked Dr. McMasters if he would still be allowed to operate at Jewish Hospital considering the above.

49.     Dr. McMasters took this as an opportunity to further exert power over, and retaliate against, Dr. Hughes:

**From:** "McMasters,Kelly Marc" <kelly.mcmasters@louisville.edu>
**Date:** August 26, 2019 at 1:39:16 PM EDT
**To:** Michael Hughes <mhughes@vanguardsurgical.net>
**Cc:** "tom.miller@ulh.org" <tom.miller@ulh.org>
**Subject: Re:  Jewish Hospital**


Mike:
You will not be granted faculty status again, gratis or otherwise.

You may correctly interpret my comments to mean that I will not be supportive of your surgical career as part of UofL Health.

Hospital privileges are a hospital matter.

Kelly M. McMasters, MD, PhD
Ben A. Reid, Sr., MD Professor and Chair
The Hiram C. Polk Jr., MD Department of Surgery
University of Louisville School of Medicine
502-852-5447 phone
502-852-1704 fax
mcmasters@louisville.edu

50.     Covid happened in 2020.

51.     Dr. McMasters took this as another opportunity to further exert power over, and retaliate against, Dr. Hughes.

Presiding Judge: HON. PATRICIA "TISH". MORRIS (630457)

COM : 000008 of 000022

Filed        24-CI-001558   03/05/2024        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
03/21/2024 03:32:44
PM
82451-9

52.     Specifically, Dr. McMasters forbade Dr. Hughes from performing surgeries at Jewish Hospital ostensibly due to Governor Beshear's emergency moratorium on elective surgeries.

53.     Dr. Hughes' surgeries were not elective procedures subject to the moratorium.

54.     Dr. Hughes reported Dr. McMasters' retaliation which jeopardized patient safety to UofL's CEO.

55.     UofL's CEO agreed with Dr. Hughes, and further required Dr. McMasters to recuse himself from involvement in Dr. Hughes surgical practice at UofL.

56.     Dr. Hughes proceeded to successfully practice his life saving surgeries at UofL without any issues – as had been the case throughout his distinguished career.

## E.     UofL's Sham Peer Review of Dr. Hughes

57.      In April 2023, Dr. Hughes expanded his private practice to include the medical management of gastroparesis.

58.     In response, UofL instituted a sham peer review against Dr. Hughes.

59.     Specifically, on June 6, 2023, Dr. Matthew Benns, the Chair of UofL's Multi-Specialty Quality Assessment & Improvement Committee ("QAIC"), sent Dr. Hughes a letter falsely stating Dr. Hughes delayed a patient's ("Patient PM") return to surgery resulting in an adverse outcome.

60.     Dr. Benns is an Associate Professor of Surgery at UofL directly under Dr. McMasters. Dr. Benns is also Dr. McMasters' Program Director of the General Surgery Residency Program.[2] In this capacity, he would report directly to Dr. McMasters.

61.     On July 3, 2023, Dr. Hughes responded to Dr. Benns via letter.

---

[2] https://louisville.edu/medicine/departments/surgery/general-surgery-residency/overview

Presiding Judge: HON. PATRICIA "TISH" MORRIS (630457)

COM : 000009 of 000022

Filed          24-CI-001558    03/05/2024          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
03/21/2024 03:32:44
PM
82451-9

62.    Specifically, Dr. Hughes responded that he believed Patient PM's adverse outcome was caused by the UofL code team, and specifically the actions of Dr. Mohamed Saad, in performing bag mask ventilation.  Dr. Saad then consulted with UofL palliative care which shortened the patient's length of stay.

63.    Dr. Hughes made a protected patient safety report on July 3, 2023 relative to Dr. Saad's and the UofL Palliative Care Team's treatment of Patient PM.

64.    Unbeknownst to Dr. Hughes, UofL and Dr. Saad retaliated against him by escalating this sham peer review of Dr. Hughes' treatment of Patient PM.

65.    Unbeknownst to Dr. Hughes, UofL hired a professional "peer reviewer" (Dr. David Parker) who is a bariatric surgeon with no background in the treatment of gastroparesis patients like Patient PM to opine that Dr. Hughes significantly breached the standard of care in his treatment of Patient PM.[3]

66.    Unbeknownst to Dr. Hughes, on September 29, 2023, UofL's QAIC recommended revoking Dr. Hughes surgical privileges.

67.    Unbeknownst to Dr. Hughes, Dr. Saad was a voting member of UofL's QAIC and he voted to revoke Dr. Hughes' privileges.

68.    Unbeknownst to Dr. Hughes, Dr. Saad was required by UofL's bylaws to recuse himself from the QAIC review of Patient PM considering he was involved in Patient PM's care and because he was the subject of Dr. Hughes' patient safety report relative to Patient PM.

---

[3] UofL's VP of Quality (RN Kami Walker) and QAIC Chair (Dr. Benns) would later testify at a January 25, 2024 hearing that no one with UofL ever had any communication with Dr. Parker to determine if he has ever taken care of gastroparesis patients or has ever performed a pyloroplasty. And Dr. Parker did not testify at this hearing.

Presiding Judge: HON. PATRICIA "TISH". MORRIS (630457)

COM : 000010 of 000022

Filed          24-CI-001558    03/05/2024          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
03/21/2024 03:32:44
PM                                                                         82451-9

69.    Unbeknownst to Dr. Hughes, on October 11, 2023, the QAIC (led by Dr. Saad) recommended to UofL's Medical Executive Committee ("MEC") to revoke Dr. Hughes' privileges.

70.    Unbeknownst to Dr. Hughes, Dr. Saad is also a member of UofL's MEC.

71.    Unbeknownst to Dr. Hughes, Dr. Saad voted to revoke his privileges.

72.    Unbeknownst to Dr. Hughes, UofL's MEC voted to recommend to UofL's Board of Directors to revoke Dr. Hughes' privileges based solely on Patient PM.

73.    On October 30, 2023, UofL finally communicated with Dr. Hughes regarding Patient PM.

74.    On that date, Dr. Hughes was handed a letter proposing to revoke his privileges within thirty (30) days if he did not appeal and was told that he failed to appear before the MEC to defend his care of Patient PM.

75.    All this was news to Dr. Hughes.

76.    Dr. Hughes was never told to appear before the MEC.

77.    Dr. Hughes was intentionally kept in the dark regarding UofL's sham peer review of his care of Patient PM.

78.    Dr. Hughes being kept in the dark prejudiced his ability to defend his care.

79.    Dr. Hughes was forced to scramble to defend his care to the MEC at a special meeting scheduled for December 5, 2023. At the special meeting, the MEC (with Dr. Saad present) voted to uphold the summary suspension.

80.    Once a summary suspension is imposed, it is reportable to the NPDB within thirty (30) days.

Presiding Judge: HON. PATRICIA "TISH". MORRIS (630457)

COM : 000011 of 000022

Filed          24-CI-001558    03/05/2024          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
03/21/2024 03:32:44
PM
82451-9

81.    Once a summary suspension is reported to the NPDB, a physician's career is irreparably harmed absent the NPDB report being voided.

82.    Dr. Hughes' career was suddenly in jeopardy.

83.    The lives and safety of Dr. Hughes' patients were suddenly in jeopardy.

84.    UofL did not allow Dr. Hughes to access medical records from UofL to defend his care.

85.    UofL forced Dr. Hughes to rely on his memory to defend his care.

86.    UofL did not allow Dr. Hughes to speak at the QAIC meeting September 29, 2023 discussing Patient PM, the MEC meeting October 11, 2023 deciding to revoke his privileges over Patient PM, or the MEC meeting deciding to immediately suspend his privileges November 21, 2023.

87.    UofL only allowed Dr. Hughes to provide a written statement defending his care after his privileges had been suspended.

88.    UofL told Dr. Hughes these actions were being taken against him because of (1) allegations that Dr. Hughes had caused additional adverse patient outcomes for Patient SS and Patient SD, and (2) Dr. Hughes had an elevated mortality index of 1.37.

89.    Dr. Hughes did not breach the standard of care in regard to UofL's alleged adverse patient outcomes.

90.    Dr. Hughes did not have a mortality index of 1.37.

91.    The VP of Quality for UofL, Kami Walker, provided misleading outcomes data to support the false mortality index of 1.37 that prejudiced UofL's MEC against Dr. Hughes and was central to their decision to suspend his privileges.

92.    Dr. Hughes did not become a terrible doctor overnight.

Presiding Judge: HON. PATRICIA "TISH". MORRIS (630457)

COM : 000012 of 000022

Filed         24-CI-001558    03/05/2024        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
03/21/2024 03:32:44
PM
82451-9

Presiding Judge: HON. PATRICIA "TISH" MORRIS (630457)

COM : 000013 of 000022

93.     UofL's characterization of Dr. Hughes as an incompetent doctor through its sudden sham peer reviews is belied by his impeccable and unblemished employment history with UofL prior to 2019 and afterwards as an independent surgeon.

94.     On November 22, 2023, UofL sent Dr. Hughes his summary suspension letter.

95.     On December 7, 2023, UofL's MEC upheld his summary suspension.

96.     On December 21, 2023, UofL informed Dr. Hughes he would have a hearing before the MEC on January 25, 2024 to defend his care of Patient PM, Patient SS, Patient SD, and his mortality index of 1.37.

97.     On January 9, 2024, Dr. Hughes provided a written response to UofL's aforementioned letter.

98.     On January 18, 2024, in advance of his January 25, 2024 hearing, UofL sent an attached report to the NPDB regarding Dr. Hughes.

99.     Dr. Hughes' career is now irreparably harmed.

100.    Dr. Hughes now cannot perform surgery on his patients.

101.    Dr. Hughes' patients are now in danger.

102.    Dr. Hughes' liability insurance was not renewed.

103.    Dr. Hughes is now being investigated by the Kentucky Board of Medical Licensure.

104.    Despite this, UofL has continued its sham peer review of Dr. Hughes.

105.    On January 25, 2024, Dr. Hughes attended UofL's sham peer review hearing where he disproved all of the allegations levied against him.

106.    During the hearing, Dr. Hughes obtained the opinion of Dr. Roman Petrov to disprove UofL's allegations against him.  Dr. Petrov is a board certified and impeccably credentialed surgeon who has performed over 300 procedures for gastroparesis, including the

Filed          24-CI-001558    03/05/2024          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
03/21/2024 03:32:44
PM
82451-9

pyloroplasty procedure which was performed by Dr. Hughes on patient PM. Dr. Petrov is a published expert in gastroparesis surgery.

107.    During the hearing, Dr. Petrov opined that Dr. Hughes met the standard of care in regard to Patients PM, SS, and SD.

108.    During the hearing, UofL admitted that physicians that participated in the underlying decision to suspend Dr. Hughes' privileges also participated in the underlying care rendered to the patients. In one event, a Hospital witness even admitted that a physician should have recused himself from the decision-making process.

109.    On February 20, 2024, UofL again upheld its decision to summarily suspend Dr. Hughes and revoke his privileges.

### F.    Immediate and Irreparable Harm to Dr. Hughes

110.    If UofL's summary suspension of Dr. Hughes' privileges is not lifted, the NPDB report not voided, and Dr. Hughes' operating room block time restored, then Dr. Hughes' business will fail and his career will be ruined.

111.    Once a summary suspension is reported to the NPDB, a physician's career is irreparably harmed absent the NPDB report being voided.

112.    While Dr. Hughes is actively trying to obtain privileges outside of UofL, the NPDB report has negatively impacted this process.

113.    Dr. Hughes' main revenue comes from performing surgery and he can no longer do this at Jewish Hospital.

114.    Dr. Hughes unfortunately believed that UofL would be fair and reasonable at the recent January 25, 2024 hearing, and that he would have been back at UofL's Jewish Hospital treating his patients by now. However, this is not that case. On February 20, 2024, Dr. Hughes was

Presiding Judge: HON. PATRICIA "TISH" MORRIS (630457)

COM : 000014 of 000022

Filed          24-CI-001558    03/05/2024          David L. Nicholson, Jefferson Circuit Clerk

Filed          24-CI-001558    03/05/2024          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
03/21/2024 03:32:44
PM
82451-9

notified that the hearing panel upheld his summary suspension and the MEC voted to revoke his privileges. Dr. Hughes was stunned at this outcome, and his career and life are falling apart as a result.

115.    In just the past few weeks, Dr. Hughes has not been able to reliably pay his employees or himself.

116.    Dr. Hughes is in the process of selling his home as he cannot make mortgage payments and has exhausted forbearance options with the bank.

117.    The Kentucky Board of Medical Licensure is investigating Dr. Hughes due to UofL's NPDB report, and his medical license is in jeopardy. This would end Dr. Hughes' career as a physician.

118.    The Medical Protective Company, Dr. Hughes' malpractice insurance, notified him that they would not renew his policies due to the NPDB report. Dr. Hughes would need to pay for tail coverage, which he cannot afford.

119.    Dr. Hughes' reputation is being damaged through UofL's malicious conduct.

120.    Dr. Hughes' patients and referring physicians are left in a bind as he cannot see patients personally when admitted to Jewish Hospital.

121.    UofL's aforementioned actions, if not reversed, will likely end Dr. Hughes' career.

## COUNT I
### (Declaratory Judgment)

122.    That Plaintiff incorporates by reference as if set forth fully herein each and every averment, allegation and statement contained in the previous paragraphs of this Complaint.

123.    That Plaintiff seeks a declaratory judgment from this Court pursuant to CR 57 which declares that (1) the summary suspension of Dr. Hughes' privileges by UofL is void *ab*

Presiding Judge: HON. PATRICIA "TISH". MORRIS (630457)

COM : 000015 of 000022

Filed                24-CI-001558   03/05/2024        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
03/21/2024 03:32:44
PM
82451-9

*initio* and (2) the adverse action report UofL filed with the NPDB concerning Dr. Hughes'

privileges UofL is void *ab initio*.

<u>**COUNT II**</u>
**(KRS 216B.165 via KRS 446.040)**

124.    That Plaintiff incorporates by reference as if set forth fully herein each and every

averment, allegation and statement contained in the previous paragraphs of this Complaint.

125.    That Plaintiff was wrongfully suspended from operating at Defendant's hospital

pursuant to Kentucky statutory law and Kentucky Revised Statute 216B.165.

126.    That the Plaintiff engaged in activity specifically protected by KRS 216B.165 and

was suspended in retaliation and reprisal for complying with his legal duty to report the incidents

as described in that statute and below.

127.    That the Plaintiff had a legal duty, which Plaintiff met, to report to his UofL

superiors and/or others any quality of care and safety concerns relative to patient safety pursuant

to KRS 216B.165(1), which reads:

> Any agent or employee of a health care facility or service licensed under this
> chapter who knows or has reasonable cause to believe that the quality of care of a
> patient, patient safety, or the health care facility's or service's safety is in jeopardy
> shall make an oral or written report of the problem to the health care facility or
> service, and may make it to any appropriate private, public, state, or federal agency

128.    That Defendant had a legal duty to investigate the patient safety issues relative to

Dr. Hughes' patient safety reports, including his July 3, 2023 report concerning Patient PM's

unnecessary and premature bag mask ventilation, in view of KRS 216B.165(2), which reads:

> Any individual in an administrative or supervisory capacity at the health care
> facility or service who receives a report under subsection (1) of this section shall
> investigate the problem, take appropriate action, and provide a response to the
> individual reporting the problem within seven (7) working days.

Presiding Judge: HON. PATRICIA "TISH". MORRIS (630457)

COM : 000016 of 000022

Filed          24-CI-001558    03/05/2024          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
03/21/2024 03:32:44
PM
82451-9

129.    That as far as Plaintiff knows, pursuant to KRS 216B.165(2), no one at UofL ever fully investigated his patient safety reports, including his July 3, 2023 report, or took appropriate action.

130.    That the Defendant has subjected the Plaintiff to unlawful reprisal, retaliation, threatened and actual use of authority and/or influence for Dr. Hughes' good faith reporting, disclosing, divulging, and bringing to the attention of UofL, through his patient safety reports, including his July 3, 2023 report concerning the circumstances and facts surrounding a patient's unnecessary and premature bag mask ventilation, in direct violation of KRS 216B.165(3), which reads:

> No health care facility or service licensed under this chapter shall by policy, contract, procedure, or other formal or informal means subject to reprisal, or directly or indirectly use, or threaten to use, any authority or influence in any manner whatsoever, which tends to discourage, restrain, suppress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any agent or employee who in good faith reports, discloses, divulges or otherwise brings to the attention of the health care facility or service the circumstances or facts to form the basis of a report under subsection (1) and (2) of this section.  No health care facility or service shall require any agent or employee to give notice prior to making a report, disclosure, or divulgence under subsections (1) or (2) of this section.

131.    That Plaintiff was wrongfully suspended for in good faith reporting, disclosing, divulging, and bringing to the attention of UofL, through his patient safety reports, the circumstances and facts surrounding patient safety matters.

132.    That the conduct of Defendant's agents, servants and employees, in retaliating against Plaintiff by suspending him and reporting him to the NPDB as a result of his compliance with his statutory duties relative to patient safety concerns has the direct effect of discouraging, restraining, suppressing, dissuading, and deterring persons such as Plaintiff from making and/or forwarding patient safety concerns.

Presiding Judge: HON. PATRICIA "TISH". MORRIS (630457)

COM : 000017 of 000022

Filed          24-CI-001558    03/05/2024          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL

DOCUMENT

03/21/2024 03:32:44

PM

82451-9

## COUNT III
### (KRS 216B.165 via Kentucky Common Law)

133.    That Plaintiff incorporates by reference as if set forth fully herein each and every averment, allegation and statement contained in the previous paragraphs of this Complaint.

134.    That Plaintiff was wrongfully suspended and subject to reprisal pursuant to Kentucky common law and public policy considerations.

135.    That the conduct of Defendant in suspending Plaintiff was in violation of well-defined public policy and thus actionable. *See Gryzb v. Evans*, 700 S.W.2d 399 (Ky. 1985); *Foster v. Jennie Stuart Med. Ctr., Inc.* 435 S.W.3d 629 (Ky. Ct. App. 2013).

136.    That the Plaintiff was suspended in retaliation and reprisal for Defendant's belief that Plaintiff had investigated and reported patient safety issues.

137.    That the conduct of Defendant's agents, servants and employees, in retaliating against Plaintiff by suspending him violated the public policy behind KRS 216B.165 to ensure safe health-care facilities.  *See Foster v. Jennie Stuart Med. Ctr., Inc.* 435 S.W.3d 629 (Ky. Ct. App. 2013).

## COUNT IV
### (Defamation)

138.    That Plaintiff incorporates by reference as if set forth fully herein each and every averment, allegation and statement contained in the previous paragraphs of this Complaint.

139.    That Defendant has slandered and libeled Plaintiff when it suspended Dr. Hughes' privileges on November 21, 2023 and reported him to the National Practitioner Data Bank ("NPDB") on January 18, 2024.

140.    Defendant's false statements and writings have caused harm to Plaintiff and Plaintiff's patients.

Presiding Judge: HON. PATRICIA "TISH". MORRIS (630457)

COM : 000018 of 000022

Filed          24-CI-001558    03/05/2024          David L. Nicholson, Jefferson Circuit Clerk

**NOT ORIGINAL**

03/21/2024 03:32:44

82451-9

**DOCUMENT**

**PM**

## COUNT V
### (Tortious Interference)

141.    That Plaintiff incorporates by reference as if set forth fully herein each and every averment, allegation and statement contained in the previous paragraphs of this Complaint.

142.    Plaintiff had a contractual and/or business relationship with, among others, their patients and healthcare benefit providers.

143.    Plaintiffs had a reasonable expectation of entering into contracts or business relationships with other individuals, including employees of UofL.

144.    Defendant had actual knowledge of the contractual or business relationship between Plaintiff, his patients, and healthcare benefit providers.

145.    Defendant knew or reasonably should have known that Plaintiff had a reasonable expectation of future contracts.

146.    Defendants intentionally acted to interfere with Plaintiff's contractual and/or business relationships or expectancies with his patients and/or medical benefits providers.

147.    Defendant had no lawful justification for its tortious interference with Plaintiff's contracts, business relationships, and/or prospective economic advantages.

148.    Defendant's tortious interference has caused harm to Plaintiff.

## COUNT VI
### (Breach of Contract)

149.    That Plaintiff incorporates by reference as if set forth fully herein each and every averment, allegation and statement contained in the previous paragraphs of this Complaint.

150.    That Plaintiff entered into one or more contracts with Defendant to obtain privileges to operate at Defendant's hospital.

Presiding Judge: HON. PATRICIA "TISH". MORRIS (630457)

COM : 000019 of 000022

NOT ORIGINAL
DOCUMENT

03/21/2024 03:32:44
PM

82451-9

151.    That Defendant materially breached its expressed written, implied and oral contracts and promises to the Plaintiff when it summarily suspended Dr. Hughes' privileges on November 21, 2023.

**COUNT VII**
**(Breach of Fiduciary Duty)**

152.    That Plaintiff incorporates by reference as if set forth fully herein each and every averment, allegation and statement contained in the previous paragraphs of this Complaint.

153.    That a fiduciary relationship existed between Defendant and Plaintiff as a result of Plaintiff placing special confidence in Defendant, who in equity and good conscience were bound to act in good faith and with due regard to the interests of the Plaintiff.

154.    That Defendant failed to observe the foregoing fiduciary duty, and that Plaintiff sustained damages.

**RELIEF REQUESTED**

**WHEREFORE**, the Plaintiff respectfully demands relief from the Defendant as follows:

1.    Dr. Hughes requests preliminary injunctive relief which (1) expunges and declares void *ab initio* the summary suspension of Dr. Hughes's privileges by UofL, and (2) requires UofL to void the adverse action report concerning his privileges filed with the NPDB, and (3) such other relief as the Court deems necessary. A Motion for Temporary Injunction is being filed with the Court simultaneously with the instant Verified Complaint.

2.    A declaratory judgment from this Court pursuant to CR 57 which declares that (1) the summary suspension of Dr. Hughes' privileges by UofL is void *ab initio* and (2) the adverse action report UofL filed with the NPDB concerning Dr. Hughes' privileges UofL is void *ab initio*.

3.    An injunction prohibiting any further acts depriving Dr. Hughes or retaliating against Dr. Hughes.

Filed          24-CI-001558    03/05/2024          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL
DOCUMENT
03/21/2024 03:32:44
PM
82451-9

4.      Any and all other equitable relief that appears appropriate at the time of trial.

Respectfully submitted,

James M. Bolus, Jr.
A.  Nicholas Naiser
Derek P. O'Bryan
Brennan J. Soergel
Caroline K. Berger
BOLUS LAW OFFICES
600 W. Main Street, Suite 500
Louisville, Kentucky  40202
(502) 584-1210
bo@boluslaw.com
nick@naiserlaw.com
derek@boluslaw.com
brennan@boluslaw.com
caroline@boluslaw.com

By: /s/ James M. Bolus, Jr.

**CERTIFICATE OF SERVICE**

        This will certify that a true copy of the foregoing has been filed electronically for service by Certified U.S. Mail to the agents for service of process listed above, on this the 5th day of March, 2024.

/s/ James M. Bolus, Jr.

Presiding Judge: HON. PATRICIA "TISH". MORRIS (630457)

COM : 000021 of 000022

Filed          24-CI-001558    03/05/2024          David L. Nicholson, Jefferson Circuit Clerk

Filed    24-CI-001558    03/05/2024    David L. Nicholson, Jefferson Circuit Clerk

**ORIGINAL DOCUMENT**

NOT

03/21/2024

82451-9

## VERIFICATION

03:32:44 PM   I, Michael Hughes, M.D., state that I have read the foregoing Complaint and the statements contained therein are true to the best of my knowledge and belief.

_____
Michael Hughes, M.D.

Subscribed and sworn to before me by Michael Hughes, M.D. this the 4th day of March, 2024.

STATE OF KENTUCKY        )
                         )
COUNTY OF JEFFERSON      )

_____
Notary Public, State at Large, Kentucky

My commission expires: _____

Presiding Judge: HON. PATRICIA "TISH". MORRIS (630457)

COM : 000022 of 000022